### MALLOY v. INDUSTRIAL COTTON OIL PROPERTIES. (No. 8108.)

(Court of Civil Appeals of Texas. Galveston. Feb. 9, 1922. Rehearing Denied March 2, 1922.)

1. Sales ⟲⟶79—Venue ⟲⟶7—Consignment under a "shipper's order," "notify," bill of lading, at certain price f. o. b. shipping point, held to require delivery to buyer.

Where goods were consigned by seller under a "shipper's order," "notify," bill of lading, which was attached to a draft drawn by seller upon the purchaser's place of residence, and written confirmation of verbal contract of sale contained clause "at $75 per ton f. o. b." shipping point, held that there was a written obligation of the seller to deliver the goods to the purchaser in the county of his residence.

2. Pleading ⟲⟶111 — Amendment to statute adds nothing to burden upon plaintiff to establish exception defeating plea for change.

The amendment of statute, declaring the requisites of a plea of privilege and providing that such plea when filed shall be prima facie proof of defendant's right to change of venue (Acts 1917, c. 176, § 1 [Vernon's Ann. Civ. St. Supp. 1918, art. 1903]), does not, when the plea is controverted, add anything to the burden resting upon the plaintiff prior to the amendment to show the exception to the general venue statute relied on to defeat the plea.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by the Industrial Cotton Oil Properties against Leo Malloy. Judgment for plaintiff, and defendant appeals. Affirmed.

Doss & Baugh, of Ballinger, and Kennerly, Williams, Lee & Hill, Richard T. Fleming, and Irl F. Kennerly, all of Houston, for appellant.

Baker, Botts, Parker & Garwood, of Houston (Palmer Hutcheson, of Houston, of counsel), for appellee.

PLEASANTS, C. J. This suit was brought by the appellee, a business association organized under a declaration of trust, in the district court of Harris county, to recover from appellant, who resides in Concho county, the sum of $812 alleged to be due appellee as the difference in value between a car of cotton seed delivered to appellee at Houston, Tex., under a contract of purchase from appellant, and the car of cotton seed contracted to be sold appellee by the appellant.

The appellant in due time filed a plea of privilege to be sued in the county of his residence. The plea was controverted by appellee, and upon a hearing on the plea and contracting affidavit the trial court overruled the plea. This appeal is from the order or judgment of the court overruling the plea of privilege.

The following facts were established on the hearing: On December 2, 1919, J. W. Hooker, a traveling purchasing agent for plaintiff, called on defendant at Paint Rock in Concho county, where the defendant then and has since resided, and there entered into an agreement with him for the purchase by plaintiff of a carload of sound dry cotton seed, to be delivered to plaintiff at Houston, Harris county, upon payment of draft attached to bill of lading. The price agreed to be paid by plaintiff for the seed was "$75 per ton f. o. b. Paint Rock." After this agree-

ment had been made, Hooker executed and delivered to the defendant the following confirmation of the agreement:

"This is to confirm purchase of one car, 22 to 25 tons, sound dry cotton seed, from Leo Malloy, at $75.00 per ton, f. o. b. Paint Rock, to be shipped soon as car can be obtained for loading. [Signed] J. W. Hooker, Traveling Representative for Industrial Cotton Oil Properties, Houston, Texas.

"Union National Bank.

"South Texas Commercial Bank."

The names "Union National Bank" and "South Texas Commercial Bank" were added to the agreement by the defendant as a memorandum of the names of the Houston banks with which plaintiff did business.

On the same day the defendant delivered the car of seed to the railway company at Paint Rock for shipment and delivery at Houston to defendant's order.

The bill of lading received by the defendant is in the regular and usual form of a bill of lading by which goods are consigned to the shipper's order, and contains the notation "Notify Industrial Cotton Oil Properties at Houston, Tex." On the next day, December 3, 1919, the defendant drew the following draft on plaintiff, to which he attached the bill of lading and delivered both to the Guaranty State Bank at Paint Rock:

"Paint Rock, Texas, December 3, 1919. Pay to the order of Guaranty State Bank, Paint Rock, Texas, $1677.60, sixteen hundred seventy seven and 60/100 dollars.

"[Signed] Leo Malloy.

"To Industrial Cotton Oil Properties, Houston, Texas.

"At Union National Bank."

Thereupon the bank credited defendant's account with the sum of $1,677.60 and forwarded draft to the Union National Bank at Houston. This draft was paid by plaintiff on December 9th, and the bill of lading delivered to it. The shipment was received in Houston on December 20th, and the freight charges paid by plaintiff. Upon examination of the seed the plaintiff sent the defendant the following telegram:

"Houston, Tex., Dec. 20, 1919.

"Leo Malloy, Paint Rock, Texas. Received today car seed AT&SF 42459 which is 60 per cent damaged and worth under interstate rules $39.00 per ton f. o. b. Paint Rock. Telegraph if satisfactory unload and account at this price, otherwise advise disposition. Present condition of seed does not indicate damage en route, damage being heat field and faulty.

"[Signed] Industrial Cotton Oil Properties."

Receiving no reply to this telegram, plaintiff, on December 23d, again wired the defendant:

"Houston, Texas, December 23, 1919.

"Leo Malloy, Paint Rock, Texas. We wired you 20th instant car seed AT&SF 42459 received and found to be 70 per cent damaged,

and that we would unload and account $39.00 f. o. b. Paint Rock and if not satisfactory to telegraph disposition. Learn you telegraphed bank here ascertain if your draft had been paid. It has but we bought prime seed and are holding car your expense. What do you wish done with it.

"[Signed] Industrial Cotton Oil Properties."

On the 24th day of December, 1919, the defendant sent to plaintiff the following telegram:

"December 24, 1919.

"Industrial Cotton Oil Properties, Houston, Texas. Will stand no damage on seed. Your Mr. Hooker looked at and bought seed. Can prove seed were in good shape when loaded. Unload at your expense.

"[Signed] Leo Malloy."

The difference in the value of the seed received by plaintiff and seed which defendant contracted to sell it was $812, the amount for which plaintiff brings this suit.

The confirmation of sale, draft, bill of lading, and telegrams before set out constitute all the writings evidencing the contract between the parties.

In addition to the facts above stated, the trial court made the following finding of fact:

"I find that it was a universal and well-established custom of the trade, with knowledge of which plaintiff was chargeable, that weight and quality of a shipment of this nature was guaranteed at destination by the shipper, and that this custom entered into this contract."

[1] We find nothing in the facts of this case which, in our opinion, distinguishes it from the cases of Seley v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399, and Callender-Holder & Co. v. Short, 34 Tex. Civ. App. 364, 78 S. W. 366, in both of which this court in effect held that a consignment of goods by a seller under a "shipper's order," "notify," bill of lading, which was attached to a draft drawn by the seller upon the purchaser's place of residence, constituted a written obligation of the seller to deliver the goods contracted to be sold to the purchaser in the county of his residence, unless there is an express agreement to the contrary.

Appellant very earnestly insists that the holding in the cases cited is not the law of this case, because the written confirmation of the verbal contract of sale contains the clause, "at $75.00 per ton f. o. b. Paint Rock," and the freight charges on the shipment were paid by the appellee.

When the confirmation of the contract of sale is considered together with the draft and bill of lading, we think it clear that the clause "at $75.00 per ton f. o. b. Paint Rock" was only for the purpose of fixing the price of the cotton seed, and binding the appellee to pay the freight charges to Houston, the place of final delivery. If the contract of sale, as shown by the draft and bill of lading,

required the delivery of the cotton seed at Houston, the agreement of appellee to pay the freight charges would not affect the obligation of appellant to deliver the seed at Houston. If the written confirmation of the contract was the only written evidence of the contract, it goes without saying that the place of final delivery of the seed should be held to be at Paint Rock.

A similar written confirmation of a verbal contract of sale was under consideration by the court in the case of Lee v. Gilchrist Cotton Oil Co. (Tex. Civ. App.) 215 S. W. 977, and the holding of the court in that case that the contract did not obligate the shipper to deliver the goods in the county of the buyer's residence was clearly sound, and in no way conflicts with the holding of this court in the cases first above cited. The Gilchrist case was decided long after the Seley and Callender-Holder Cases, and it is manifest that the learned court by which that case was decided did not regard that decision as in conflict with the earlier cases, or as involving the same question, because no reference is made to these cases in the court's opinion in the Gilchrist Case.

The cases of Southwestern Grain & Seed Co. v. Blumberg (Tex. Civ. App.) 162 S. W. 1, and Gottlieb v. Ainsworth (Tex. Civ. App.) 229 S. W. 341, are also cited by appellant in support of his contention that no written obligation of his performance in Harris county is shown by the evidence in this case.

In the Blumberg Case, appellee Blumberg, who resided in Guadeloupe county, contracted with the appellant to sell it a carload of corn to be delivered on board the cars at Seguin, in Guadeloupe county, for shipment to El Paso county. The appellant resided in Bexar county, and, in order to collect the amount agreed to be paid him for the corn, Blumberg drew a draft on the appellant, and attached thereto the bill of lading for the corn which he had delivered on the cars at Seguin for shipment to El Paso county. This draft and bill of lading was deposited in a Seguin bank, and by it transmitted to a bank in San Antonio, where the draft was paid by the appellant and the bill of lading delivered to it. From this statement of the case it is perfectly clear that Blumberg did not contract in writing to deliver the corn or to perform any part of his contract in Bexar county.

In the Ainsworth Case the corn contracted to be sold was never shipped by the seller, and consequently no bill of lading was issued and no draft drawn. We do not see how it can be seriously argued that either of these cases conflict with the decisions of this court in the cases before cited. The interpretation placed upon the Seley and Callender-Holder Cases by this court in the subsequent cases of Sanders v. Hester Cotton Co. (Tex. Civ. App.) 195 S. W. 269, and Val-despino v. Dorrance (Tex. Civ. App.) 207 S. W. 649, in no way changes the express holding in the former cases when applied to the facts shown by this record. The holding in those cases has been followed by other courts of Civil Appeals, and in the case of People's Ice Co. v. Interstate Oil Refining Co. (Tex. Civ. App.) 182 S. W. 1163, in which the holding in the Seley and Callender-Holder Cases was approved and followed by the Court of Civil Appeals, the Supreme Court, in refusing an application for a writ of error, necessarily approved the holding.

[2] The amendment of the statute declaring the requisites of a plea of privilege and providing that such plea when filed shall be prima facie proof of defendant's right to a change of venue (Acts 1917, c. 176, § 1 [Vernon's Ann. Civ. St. Supp. 1918, art. 1903]), does not, when the plea is controverted, add anything to the burden resting upon the plaintiff prior to said amendment to show the exception to the general venue statute relied on to defeat the plea.

We are not inclined to question the soundness of our former holding in the cases cited, nor its application to the facts of this case.

We are of opinion that the judgment of the court below should be affirmed; and it has been so ordered

Affirmed.

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

